IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. BRIAN A. FOLEY, <br><br> *Plaintiffs and Relators*, <br><br> v. <br><br> DR. JOHN W. MITCHELL; THE HEART CENTER CARDIOLOGY, PC, et al., <br><br> *Defendants*. | Case No. 3:14-cv-135-RCL |

## MEMORANDUM OPINION

Plaintiff's Motion for Reasonable Expenses, Attorneys' Fees, and Costs (ECF No. 77) arises out of a 2014 False Claims Act ("FCA") suit that Dr. Brian Foley filed against Dr. John Mitchell, The Heart Center Cardiology ("THC"), and East Alabama Medical Center ("EAMC"). The underlying lawsuit alleged that Dr. Mitchell was falsifying medical records and performing unnecessary heart stent procedures. That suit resulted in a settlement pursuant to the terms of which Dr. Mitchell and THC paid $35,000. EAMC—the hospital at which Dr. Mitchell practiced—settled for $1,000,000. Counsel for EAMC paid relator's attorneys' fees ($98,905.21) and expenses ($5,375.78). Relator now seeks reimbursement from Dr. Mitchell and THC for attorneys' fees in the amount of $19,269.60 and reimbursement for expenses in the amount of $832.94. He asks for a total of $20,102.54. Dr. Mitchell and THC have refused to pay and believe that the requested amount is not proportional to the result. For the reasons set forth below, the Court will grant in part and deny in part relator's motion.

## **LEGAL STANDARD**

The FCA allows a *qui tam* relator like Dr. Foley to "receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). The FCA further states that "[a]ll such expenses, fees, and costs shall be awarded against the defendant." *Id.* In determining the amount to be paid, "[t]here is no precise rule or formula." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The Court has discretion when determining what amount is reasonable. *See Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997). Courts generally calculate attorneys' fees under the lodestar formula, meaning "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[1] *Hensley*, 461 U.S. at 433. When analyzing a reasonable hourly rate, courts look at "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The "relevant market" is usually the "place where the case is filed." *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). Litigants have no duty to select "the nearest and cheapest attorney" in order to win expenses and fees. *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983). A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

---

[1] The lodestar method takes into account twelve different factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19. (5th Cir. 1974).

Although the lodestar method is the primary formula for calculating expenses and fees, courts may adjust the formula to account for other factors. *See Hensley*, 461 U.S. at 434. In the Eleventh Circuit, courts also reduce the amount awarded in cases that resulted in only partial or limited success. *See Norman*, 836 F.2d at 1302. In addition to being reasonable, the fee breakdown must also be specific and detailed rather than vague or cursory. Awarding fees and expenses is an area in which courts inherently have a great deal of discretion, so the Court must focus on what amount is reasonable under the totality of the circumstances.

## ANALYSIS

In this case, relator seeks reimbursement for attorneys' fees in the amount of $19,269.60 and reimbursement for expenses in the amount of $832.94 for a total of $20,102.54. As explained below, the Court finds that relator did prevail to some extent and that the hourly rate and time spent on the case were both reasonable; however, because relator was not entirely successful, the $20,102.54 will be reduced to $8,041.02.

**I. The Requested Attorneys' Fees are Reasonable.**

When assessing fees under the lodestar method, both the hours worked and the rate charged must be reasonable. Here, both lodestar components were reasonable.

**A. The Reported Hours were Reasonable.**

The hours reported are comprised of work directly attributable to the claims against Dr. Mitchell and THC along with some expenses and fees common to Dr. Mitchell, THC, and EAMC. When Dr. Foley settled the costs and fees claim with EAMC, he removed any time solely attributable to work related to Dr. Mitchell and THC. Most courts hold that defendants are

jointly and severally liable for fees and expenses, though in this case relator attempted to allocate the fees and expenses to the party related to the corresponding work rather than collecting all or any portion from one defendant. In light of the difficulty of the case, the hours expended were reasonable, as FCA claims are inherently complex. Additionally, the attorneys kept meticulous time logs and billing descriptions and have reported their hours with the requisite specificity. The logs in ECF 78-7 are concrete and specific rather than vague or cursory, with each entry describing a specific task. Similarly, ECF 78-10 breaks down the expenses for working on the case rather than simply estimating an amount. It is also worth noting that Dr. Mitchell's Response and Objection to Relator's Motion for Reasonable Expenses, Attorneys' Fees, and Costs does not even meaningfully dispute that the hours expended were reasonable.[2] ECF No. 81-1. For these reasons, there is no need for any reduction on the basis of vague or generic billing practices. There is also no issue with the fact that more than one attorney worked on the case, as that is common practice with FCA claims.

**B. The Reported Rate was Reasonable.**

The hourly rates charged by the attorneys are reasonable. The attorneys in this case have reputations for being successful in FCA cases. They also submitted affidavits explaining their backgrounds, credentials, and work in this case. Contrary to defendants' assertions, courts do consider attorneys' backgrounds and resumes in deciding whether a fee is reasonable; to disregard such information would be illogical, as clients choose attorneys based on their reputations, and fees are generally established at the beginning of the attorney-client relationship.

---

[2] Unlike in most fee disputes, defendants never attempt to explain why the number of hours expended is unreasonable, and they never argue that the time logs are too vague or non-specific. Although defendants do challenge the hourly rate, as explained elsewhere in this Memorandum Opinion, the Court disagrees with that challenge.

4

Defendants do not even attempt to meaningfully contest the attorneys' past successes, asking the Court to focus instead on the attorneys' supposed lack of success in this case. As explained below, however, the Court strongly disagrees with defendants' contention that relator did not prevail to any extent. Additionally, the reasonableness of a fee does not necessarily hinge on the outcome of the case. When a client selects an attorney and agrees to pay a certain hourly rate, he is bound by that hourly rate (barring exceptional circumstances). He does not get to claim that the fee he agreed to is suddenly unreasonable simply because he lost his case. The same principle applies here. With that principle and the available information about relator's attorneys in mind, the Court finds that the hourly rates for all four attorneys were reasonable.

Looking first at Don McKenna, he has repeatedly been recognized for his work in both regional and national publications. He has been involved with FCA work since 1997 and won recoveries totaling more than $1.6 billion. Additionally, he has given speeches and lectures on the FCA throughout the country. The Court finds that Mr. McKenna's rate of $510 per hour in 2014 and $525 for all subsequent years was reasonable. Turning next to Scott Powell, he is a senior partner at Hare, Wynn, Newell & Newton, LLP. He has been involved with FCA cases and the *qui tam* provisions of the Act since the mid-1990s and has won some of the most significant monetary awards in FCA history for his clients. He is involved with groups dedicated to fighting fraud and has served as the President of numerous prestigious legal organizations. The Court finds that Mr. Powell's rate of $650 per hour was reasonable. As for Randi McCoy, she has worked on numerous FCA cases. She joined Hare, Wynn, Newell & Newton, LLP in 2015 and has been practicing exclusively in the area of the FCA ever since. The Court finds that her initial hourly rate of $125 was reasonable, as was the increase to $150 once she gained more experience in FCA litigation. Finally, Jonathan Corley has been a partner at Whittelsey,

Whittelsey, Poole & Corley, P.C. since 2014. Although he does not have an FCA-specific background, he has extensive experience with litigation. The Court finds that Mr. Corley's hourly rate of $350 was reasonable. Furthermore, Adam Plant was specifically retained to review the hourly rates of all four attorneys, and he determined that the rates were reasonable based on the attorneys' reputations, experience, and work product. *See* ECF 78-13.

**II. The United States and Relator Partially Prevailed in the Underlying Litigation.**

Dr. Mitchell and THC settled the underlying lawsuit for $35,000. Even though Dr. Foley had sought millions of dollars in damages and agreed to the $35,000 reluctantly, his reluctance does not change the fact that the ultimate settlement was only $35,000. Dr. Foley's stated reasons for accepting the lower amount are also immaterial, so there is no need to discuss the parties' dispute about relator's rationale for entering into the settlement agreement. Regardless of why the government pressured Dr. Foley to settle (or whether they pressured him at all), $35,000 is still substantially lower than the amount that he initially sought.

The parties also disagree about whether the underlying lawsuit led to any changes in hospital policy. If there was in fact a policy change, that would increase the extent to which Dr. Foley prevailed on his underlying claim, as a monetary award is not the sole measure of success. The Court, however, finds that Dr. Foley has brought forth insufficient evidence to prove that any meaningful changes to hospital policy actually occurred. He had the burden to make such a showing, but he failed to do so. This failure is exemplified by his own Memorandum (ECF 78) accompanying his Motion for Reasonable Expenses, Attorneys' Fees, and Costs. In claiming that "policies related to cardiac procedures have been updated at EAMC," he cites only Exhibit 4 to the Memorandum. ECF 78 at 9. Upon closer review, the Court has discovered that Exhibit 4 is

simply the Declaration of Don McKenna.[3] Moreover, the Declaration merely states in the most cursory sense that the settlement led to "policy changes to protect patients."[4] ECF 78-4 at ¶ 30. Mr. McKenna never explains how he learned that information, nor does he provide any other proof to support his statement. The word "policy" is not mentioned again in Exhibit 4 (nor in any other exhibit). Dr. Foley's Memorandum mentions the alleged policy changes several times, but not once does he offer any evidence of or explanation regarding such changes. In fact, Dr. Foley never explains what the supposed changes actually are. Even without the evidence that Dr. Mitchell and THC put forth to rebut Dr. Foley's assertion, the Court would not be able to find that Dr. Foley proved the existence of any post-settlement policy changes. The Court is not necessarily accusing Dr. Foley or his attorneys of lying about the existence of hospital policy changes; however, the complete lack of any evidentiary support for relator's contentions is concerning. Regardless of relator's intent, there is simply insufficient evidence to prove that such changes ever actually occurred.

Having disposed of any arguments regarding the reasons behind the settlement or alleged hospital policy changes, the Court is left to make a decision based solely on a comparison of relator's original claims and the ultimate settlement amount. Dr. Foley initially brought two claims: (1) fraudulent billing for unnecessary stenting; and (2) fraudulent billing for unsupervised cardiac testing. The Court granted Dr. Mitchell's Motion to Dismiss for the second claim, meaning that 50% of his initial claim was dismissed outright. At the same time, however, this Court is unconvinced by defendants' contention that "neither the government nor the relator

---

[3] As previously noted, Don McKenna is one of Dr. Foley's attorneys in this case.
[4] The paragraph in full reads as follows: "Although, the $35,000 settlement amount alone is sufficient to justify the request for fees and expenses, the additional value added from: exposure of the conduct; criminal prosecution and plea; **policy changes to protect patients;** and, a companion million-dollar settlement are further justification for the award." ECF 78-4 at ¶ 30 (emphasis added).

were the prevailing party in the criminal case." ECF No. 81-1 at 6. A settlement of any amount still means that relator prevailed to some extent, even if he did not fully prevail. When the hours and hourly rate are both reasonable but "the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Cullens*, 29 F.3d at 1492 (citing *Hensley*, 461 U.S. at 434).

Defendants are correct that it would be unfair to require payment of 100% of the fees incurred throughout the lawsuit when relator did not prevail on 100% of his claims. The unreasonableness of the requested amount is exemplified by comparing it to the amount that EAMC paid. EAMC settled the case for $1,000,000 and paid $104,280.99 in fees and expenses. $104,280.99 is equal to roughly 10% of the $1,000,000 settlement. In contrast, the $20,102.54 that relator seeks in fees and expenses from Dr. Mitchell and THC is equal to approximately 57% of the $35,000 settlement amount. The amount that relator requests is simply disproportionate to the result. Therefore, because Dr. Foley prevailed on only one of his two claims, the Court will reduce the award by 50%. This 50% reduction would leave Dr. Foley with $10,051.27 total for fees and expenses.

As previously explained, however, relator also did not entirely prevail on his first claim. Therefore, awarding 50% of all requested fees would still be too high. The 50% reduction in fees and expenses would leave relator with $10,051.27, which is equal to approximately 29% of the $35,000 settlement amount. This is still disproportionate, especially because (as noted above) $35,000 is substantially less than the millions that Dr. Foley initially sought. Therefore, the Court has decided to award only 80% of the remaining $10,051.27. Defendants will be ordered to pay $7,707.84 in fees and $333.18 in expenses for a total of $8,041.02. Determining expenses and fees is far from a precise science, but after analyzing Dr. Foley's limited overall success, the

Court believes that $8,041.02 is reasonable. Moreover, $8,041.02 is still equal to nearly 23% of the settlement amount, which is significantly higher than the percentage of fees paid in the EAMC settlement.

Finally, relator requests leave to file a subsequent motion to recover the fees and expenses associated with filing the Motion for Reasonable Expenses, Attorneys' Fees, and Costs as well as for fees and expenses associated with filing the Reply to Defendants' Objection to Relator's Motion for Reasonable Expenses, Attorneys' Fees, and Costs. A request for fees is not supposed to "result in a second major litigation" and thus courts are permitted to award these additional fees and expenses. *Hensley*, 461 U.S. at 437. Defendants were well within their rights to object to relator's disproportionate request for $20,102.54, and had they made even the slightest attempt to negotiate for a lower amount, Dr. Foley would be barred from requesting any additional fees and expenses. Instead of attempting to compromise, however, Dr. Mitchell and THC refused to pay a single penny in fees or expenses. This left Dr. Foley with no choice but to seek relief from this Court. Therefore, the Court will grant leave for relator to file a subsequent petition.

## CONCLUSION

Based on the foregoing, the Court will **GRANT IN PART AND DENY IN PART** Relator's Motion for Reasonable Expenses, Attorneys' Fees, and Costs.

It will be **ORDERED** that Dr. Mitchell and THC must pay $333.18 in expenses and $7,707.84 in attorneys' fees for a total of $8,041.02.

It will be **FURTHER ORDERED** that Dr. Foley's request for leave to file a petition for fees and expenses associated with filing the Motion for Reasonable Expenses, Attorneys' Fees,

and Costs as well as for fees and expenses associated with filing the Reply to Defendants' Objection to Relator's Motion for Reasonable Expenses, Attorneys' Fees, and Costs is **GRANTED**.

A separate Order accompanies this Memorandum Opinion.

Date: 11/18/19

Royce C. Lamberth
United States District Court Judge